# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | : | |
| JOHN PASSMORE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 14-1742 (EGS) |
| | : | |
| DEPARTMENT OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>MEMORANDUM OPINION</u>

This matter is before the Court on Defendant's Second Motion for Summary Judgment [ECF No. 43].  For the reasons discussed below, the motion will be granted.

## I. BACKGROUND

Plaintiff "is a State Prisoner currently confined at SCI FOREST [in] Marienville, [Pennsylvania]."  Compl. ¶ 3.  He brings this action under the Freedom of Information Act ("FOIA"), *see* 5 U.S.C. § 552, against the United States Department of Justice ("DOJ"), *id*. ¶ 1, to challenge the response of the Federal Bureau of Investigation ("FBI") to his request for information maintained in a particular file (7A-PH-93427), *id*. ¶ 9.  Specifically, plaintiff requests email messages between himself and Melissa Chamberlain from March 2002 to July 2002.  *See id*. ¶¶ 23-24, 26.[1]  It appears that plaintiff once possessed a "vast amount of . . . legal

---

[1]  The "criminal investigation lodged against [plaintiff]" into the kidnapping and murder of Melissa Chamberlain involved the FBI and state and county authorities in Pennsylvania.  Declaration of John Passmore [ECF No. 22-1] ("Passmore Decl.") ¶ 3.  Because plaintiff "vehemently [denied] that [a] kidnapping had occurred," he refused to "plea[d] to any kidnapping charge or element of kidnapping."  *Id*. ¶ 10; *see id*. ¶ 25.  Instead, he entered into "an open plea to murder," and "a mini-trial [was held] to determine [his] degree of guilt[.]"  *Id*. ¶ 11.  Computers

work under file # [7A-PH-93427]," but that work "was lost" when plaintiff "went to RHU in

prison."  Mem. of P. & A. in Support of Defs.' Mot. for Summ. J. [ECF No. 14-1] ("Def.'s

Mem."), Decl. of David M. Hardy [ECF No. 14-3] ("Hardy Decl."), Ex. A (Letter to FBI from

plaintiff dated May 1, 2013).

In his first FOIA request to the FBI's headquarters office, plaintiff requested "Emails for

P.C. Gateway Computer Serial # 0014990444, model # TBR3450PIII; and Emails from Gateway

P.C. Serial # 0020449123; Also, warrant[s] and witness statement[s]."  Hardy Decl., Ex. A.  He

sent a second and substantially similar request to the FBI for "[a]ll material[s] under file # 7A-

PH-93427, including emails from P.C. Gateway Computer Serial # 0014990444, model #

TBR3450PIII; and emails from Gateway P.C. Serial # 00200449123," as well as copies of emails

sent to and received by three particular email addresses.  *Id*., Ex. B (Letter to David M. Hardy,

Record/Information Dissemination Section, Records Management Division, FBI, dated May 15,

2013) at 1.  Further, plaintiff explained that "the information requested is not to be used for

commercial benefit, so [he did] not expect to be charged fees for . . . review of the material to see

if it falls within one of FOIA's exemptions."  *Id*., Ex. B at 2.

FBI staff assigned the matter a tracking number, FOIPA Request Number 1215884-000,

acknowledged receipt of plaintiff's correspondence, and informed plaintiff that his requests "did

not contain sufficient information to conduct an accurate search of the [FBI's] Central Records

System ('CRS')."  Hardy Decl. ¶ 7.  Plaintiff was provided a Certification of Identity form, *id*.,

---

belonging to plaintiff and to Ms. Chamberlain had been seized, *see id*. ¶¶ 6-7, and evidence introduced at trial
included emails sent by him to Ms. Chamberlain, *see id*. ¶¶ 13, 16, 18, 67.  Emails sent by Ms. Chamberlain to
plaintiff could not be retrieved.  *See id*. ¶¶ 14, 67-68; *see also id*. ¶¶ 15, 60.  "At the end of Degree of guilt trial held
by a judge and not a jury [plaintiff] was found guilty of 2nd degree murder . . . and [was] sentenced to life in prison
in the Commonwealth of Pennsylvania."  *Id*. ¶ 26.  According to plaintiff, both his "missing emails and Ms.
Chamberlain's missing emails contained evidence of [his] innocence to the kidnapping element of 2nd degree
murder."  *Id*. ¶ 22.

which he completed and returned, and in a separate letter plaintiff clarified his request as one for "all information pertaining to . . . John Passmore and all materials under File # 7A-PH-93427," including emails sent from and received by four email accounts identified by plaintiff as cham1339@yahoo.com, nore149@yahoo.com, shawlove6917067@yahoo.com, and cham4665@kutztown.edu.  *Id*., Ex. D (Letter to David M. Hardy from plaintiff dated May 30, 2013) at 1.  Plaintiff repeated his expectation that no fees would be charged because "[t]he information requested is not to be used for commercial benefit[.]"  *Id*., Ex. D at 2.

The FBI advised plaintiff that there were duplication fees of $.10 per page for hard copies, and that records could be released on CD if plaintiff provided an alternative address for delivery.  *See id*., Ex. G (Letter to plaintiff from David M. Hardy dated September 12, 2013). "The first 100 pages, or the cost equivalent ($10.00) for releases on CD, [would] be provided . . . at no charge."  *Id*., Ex. G.  Based on the results of the FBI's first search, which yielded "approximately 16,039 pages of records potentially responsive to [plaintiff's] request," *id*. ¶ 11, plaintiff would have incurred approximately $1,593.90 in duplication fees for paper copies, or $485.00 if the responsive records were released on CD.[2]  *Id*.; *see id*., Ex. G.  "The FBI . . . offered plaintiff the option to reduce the scope of his request to accelerate the process and reduce potential search and duplication fees."  *Id*. ¶ 11.

Plaintiff explained that he expected the initial 100 pages of responsive records in paper form, and that the requested email messages be included in these 100 pages.  *See id*., Ex. J (Letter to David M. Hardy from plaintiff ) ¶¶ 2-5.  On the assumption that "[a]ll email info is in [the] first 100 pages," he next sought "any reference by governmental authorities regarding the . .

---

[2]  Plaintiff challenged the FBI's response by filing an administrative appeal to the DOJ's Office of Information Policy.  Hardy Decl. ¶ 12; *see id*., Ex. H (Letter to Office of Information and Privacy from plaintiff dated August 20, 2013).  Because the FBI had not made an adverse determination at that time, "OIP informed plaintiff that there is no action for [OIP] to consider on appeal." *Id*. ¶ 15.

. emails and any witness info on Nelson Roscoe." *Id*., Ex. J ¶ 6.  Lastly, plaintiff sought a fee waiver for up to 2,000 pages of responsive records and an installment arrangement for any remaining fees.  *See id*., Ex. J ¶¶ 7-8.

On January 13, 2013, the FBI informed plaintiff that its staff had reviewed 103 pages of records and it released 100 pages, after having withheld certain information under FOIA Exemptions 3, 6, 7(C), 7(D), and 7(F).  *Id*. ¶ 16; *see id*., Ex. L (Letter to plaintiff from David M. Hardy dated January 13, 2013) at 1.  Plaintiff complained that the FBI sent him a CD when he requested records in paper form.  *Id*. ¶ 17; *see id*., Ex. M (Letter to David M. Hardy from plaintiff dated January 16, 2014).  The format of the FBI's response was the subject of plaintiff's administrative appeal to the DOJ's Office of Information Policy ("OIP").  *Id*. ¶ 18; *see id*., Ex. N (Letter to OIP from plaintiff dated February 6, 2014) at 3.  The FBI obliged plaintiff by sending him 103 pages of records in paper form on January 30, 2014.  *Id*. ¶ 17 n.3.

Plaintiff also raised in his administrative appeal the FBI's apparent refusal to release "the actual inter-active email conversations between" the email accounts he identified between March 2002 and July 2002.  *Id*., Ex. N at 2.  He "requested the emails only and not the first 100 pages of [records maintained in] Case No. 7A-PH[-]93427."  *Id*., Ex. N at 3-4.  Insofar as plaintiff reiterated his interest in the emails alone, the FBI treated plaintiff's FOIA request as having been "limited [in] scope . . . to the email traffic between specific email addresses."  *Id*., Ex. P (Letter to plaintiff from Anne D. Work, Senior Counsel, Administrative Appeals Staff, OIP, dated May 15, 2014) at 1.  OIP addressed the "releaseability" of the email communications as follows:

> After carefully considering your appeal, I am denying in full your narrowed request for third-party email messages.  The [FOIA] provides for disclosure of many agency records.  At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement

> activities.  Please be advised that we can neither confirm nor deny the existence of records responsive to your narrowed request. Without consent, proof of death, official acknowledgment of an investigation, or an overriding public interest, confirming or denying the existence of such records, including law enforcement records, concerning an individual would constitute a clearly unwarranted invasion of personal privacy, and could reasonably be expected to constitute an unwarranted invasion of personal privacy.

*Id.*, Ex. P at 1.

Plaintiff filed this civil action on September 29, 2014.[3]  To the complaint plaintiff attached exhibits "tending to show that the emails he requested were transmitted between himself and a deceased individual."  *Id.* ¶ 21.  "After further evaluation of plaintiff's request, the FBI attempted to locate the specific emails requested by plaintiff."  *Id.* ¶ 22.  It located and released 10 pages of records to plaintiff on June 25, 2015, after having withheld certain information under FOIA Exemptions 6, 7(C), and 7(E).  *Id.*; *see generally id.*, Ex. Q (Letter to plaintiff from David M. Hardy dated June 25, 2015).  Further, the FBI informed plaintiff that "additional records (emails)[] which may have been responsive to his FOIPA request[] were destroyed on or about February 17, 2010 pursuant to evidence destruction procedures."  *Id.* ¶ 22.

In sum, "the FBI processed 103 pages at the administrative stage and 10 pages at the litigation stage."  *Id.* ¶ 4.  Based on plaintiff's representation that the 103 pages released at the administrative stage "were not what he is seeking," *id.*; *see id.*, Ex. N at 3, 7; *see also* Compl. ¶¶ 36, 38, defendant's motion and this Memorandum Opinion focus on the 10 pages of records released to plaintiff on June 25, 2015.[4]

---

[3]  The Court treats the complaint as if it were filed on September 29, 2014, the date on which the Clerk of Court received it and plaintiff's application to proceed *in forma pauperis*.

[4]  Plaintiff has not paid any search or copy fees, and he cannot now complain that the FBI has not searched all 16,039 pages of potentially responsive records or that it has not released any records beyond the 100 pages he could receive at no charge.

## II. DISCUSSION

### A. Summary Judgment in a FOIA Case

"FOIA cases typically and appropriately are decided on motions for summary judgment."
*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  Courts will
grant summary judgment to an agency as the moving party if it shows that there is no genuine
dispute as to any material fact and if the agency is entitled to judgment as a matter of law.  Fed.
R. Civ. P. 56(a).  "When, as here, an agency's search is questioned, the agency is entitled to
summary judgment upon a showing, through declarations that explain in reasonable detail and in
a nonconclusory fashion the scope and method of the search, that it conducted a search likely to
locate all responsive records."  *Brestle v. Lappin*, 950 F. Supp. 2d 174, 179 (D.D.C. 2013) (citing
*Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982)).  "To successfully challenge an agency's
showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts'
demonstrating that there is a genuine issue with respect to whether the agency has improperly
withheld extant agency records."  *Span v. U.S. Dep't of Justice*, 696 F. Supp. 2d 113, 119
(D.D.C. 2010) (quoting *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989)).

### B. The FBI Conducted a Reasonable Search for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material
doubt that its search was reasonably calculated to uncover all relevant documents."  *Ancient Coin
Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and
internal quotation marks omitted).  "The Court applies a 'reasonableness' test to determine the
'adequacy' of search methodology, consistent with the congressional intent tilting the scale in
favor of disclosure."  *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 27 (D.C. Cir. 1998)
(internal citations omitted).  "[T]he issue to be resolved is not whether there might exist any

6

other documents possibly responsive to the request, but rather whether the search for those documents was adequate." *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citing *Weisburg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.D.C. 1983)).  The agency may submit affidavits or declarations to explain the method and scope of its search, *see Perry*, 684 F.2d at 127, and such affidavits or declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents," *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted).

### 1.  The FBI's Central Records System

The FBI's Central Records System ("CRS") includes "applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained . . . in the course of fulfilling [the FBI's] integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency[.]"  Hardy Decl. ¶ 23.  Within the CRS is "a numerical sequence of files, called FBI 'classifications,' which are organized according to designated subject categories."  *Id.* ¶ 24.  Categories include "types of criminal conduct and investigations conducted by the FBI [and] categorical subjects pertaining to counterterrorism, intelligence, counterintelligence, personnel, and administrative matters."  *Id.*  Each new case file "is assigned a Universal Case File Number . . . consisting of three sequential components: (a) a CRS file classification number, (b) the abbreviation of the FBI Field Office of Origin . . . , and (c) the assigned individual case file number for that particular subject matter."  *Id.*

"The general indices to the CRS are the index or 'key' to locating records within the . . . CRS."  *Id.* ¶ 25.  They "are arranged in alphabetical order and comprise an index on a variety of subject matters," such as "individuals, organizations, events, or other subjects of investigative

interest[.]"  *Id*.  There are two categories of general indices.  *Id*.  A main entry "pertains to

records indexed to the main subject(s) of a file" and typically "carries the name of an individual,

organization, or other subject matter that is the designated subject of the file."  *Id*. ¶ 25.a.  A

reference entry "pertains to records that merely mention . . . an individual, organization, or other

subject matter" contained in another main file about a different subject matter.  *Id*. ¶ 25.b.  FBI

personnel index only the information deemed "relevant and necessary for future retrieval," and

"not . . . every individual name or other subject matter" is indexed.  *Id*. ¶ 26.

   The Automated Case Support system ("ACS"), effective since 1995, integrates CRS

records from automated systems previously utilized by the FBI into one "single, consolidated

case management system accessible by all FBI offices."  *Id*. ¶ 27.  The Universal Index ("UNI")

is the CRS's "automated index" and is the "centralized, electronic means of indexing pertinent

investigative information to FBI files for future retrieval via index searching."  *Id*. ¶ 28.  Here,

"[i]ndividual names may be recorded with . . . identifying information such as date of birth, race,

sex, locality, Social Security Number, address, and/or date of an event."  *Id*.  "[A] search

employing the UNI application of ACS encompasses data that was already indexed into the prior

automated systems superseded by ACS," such that "a UNI index search in ACS is capable of

locating FBI records created before its . . . implementation [in 1995] to the present day in both

paper and electronic format."  *Id*.

   2.  Results of the FBI's Search of the Central Records System

   FBI staff locate CRS information using "an index search methodology," that is, by using

"the automatic UNI application of ACS."  *Id*. ¶ 29.  Where, as here, a requester is "seeking

information about himself, such information would reasonably be expected to be located in the

CRS," the system in which the "FBI indexes information about individuals, organizations, and

other subjects of investigative interest for future retrieval." *Id.* ¶ 31.  Using "a three-way phonetic breakdown of the name of John Fitzgerald Passmore and John F. Passmore, III," other variations of plaintiff's name, plaintiff's alias (Joel F. Henderson), and identifying information supplied by plaintiff in his request and Certificate of Identification Form as search terms, the FBI's search yielded "the file requested by plaintiff[:] 7A-PH-93427." *Id.*  ¶ 30.

### 3.  Plaintiff's Challenges to the FBI's Search

Plaintiff challenges the FBI's search on several grounds, none of which has merit.  First, he addresses the FBI's selection of search terms.  *See* Pl.'s Opp'n at 2, 9, 12.[5]  Plaintiff claims that the FBI "used a limited amount of search terms, with no synonyms for terms in plaintiff['s] request." *Id.* at 9.  While the declarant explains that variations of plaintiff's name were used as search terms, plaintiff faults the FBI for having failed to set forth all of the search terms in the declaration itself.  *See id.* at 2, 9.  Based on the reasonable interpretation of plaintiff's request – that plaintiff sought information about himself – it is reasonable for FBI staff to have used variations of his name and alias, along with identifying information as search terms.

Second, plaintiff claims that the FBI failed to "search[] the other FBI field offices that were contacted by [him]." *Id.* at 10.  It appears that plaintiff attempted to submit FOIA requests to FBI field offices in Philadelphia and Fort Washington, Pennsylvania.  *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. [ECF No. 22-1], Exhs. DD, EE & FF.  However, the only FOIA request at issue in this case is the request plaintiff submitted to FBI Headquarters in May 2013, that is, FOIPA Request Number 1215884-00.  *See* Compl. ¶¶ 8-9.  Furthermore, because CRS

---

[5]  Plaintiff submits three documents in opposition to defendants' motion: Plaintiff's Opposition to Defendant's Second Motion for Summary Judgment and Opposition to Plaintiff's Motion to Compel, Plaintiff's Opposition to Defendant's Memorandum of Points and Authorities in Support of Defendant's Second Motion for Summary Judgment and Opposition to Motion to Compel, and Plaintiff's Opposition to Defendant's Statement of Material Facts As To Which There Are No Genuine Issues.  These documents appear in a single docket entry, ECF No. 48.  The Court will refer to the documents jointly as "Pl.'s Opp'n" using the sequential page numbers designated by ECF.

"spans the entire FBI organization and encompasses the records at FBI Headquarters . . . , FBI Field Offices, and FBI Legal Attaché Offices . . . worldwide," Hardy Decl. ¶ 23, the search would have afforded access to the Philadelphia and Fort Washington field offices.  *See Dillon v. Dep't of Justice*, 102 F. Supp. 3d 272, 285 (D.D.C. 2015) ("Furthermore, the CRS searches afford access to field office files because []FBI Field Offices have automated indexing functions.").

Third, plaintiff faults the FBI for having searched only the CRS when it should have searched "the Electronic Surveillance indices" also.  Pl.'s Opp'n at 10; *see id*. at 3.  An agency is not required to search every system of records; rather, it need only search the system or systems of records where responsive records likely would be located.  *See Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  Plaintiff nowhere mentions that he was, or suggests that may have been, the target of electronic surveillance.  Absent a specific request that the FBI search ELSUR, the Court finds that the FBI's reliance on the CRS alone, the system "where the FBI indexes information about individuals," Hardy Decl. ¶ 31, was appropriate under the circumstances of this case.  Mere speculation that additional documents might be found in another database does not render the FBI's search inadequate.  *See Meeropol v. Meese*, 790 F.2d 942, 954 (D.C. Cir. 1986) ("In the absence of more concrete evidence from appellants that such files actually exist, their speculative assertions cannot serve as the basis for vacating the grant of partial summary judgment.").

Fourth, plaintiff focuses his attention on the FBI's initial response to his FOIA request, his fee waiver request, and the initial search results of the search, that is, 16,039 pages of potentially responsive records.  Plaintiff contends that the FBI failed to respond at all to his initial FOIA request and to his fee waiver request.  *See* Pl.'s Opp'n at 3.  Defendant demonstrates

that the FBI did acknowledge receipt of plaintiff's initial correspondence, only to point out the insufficiency of the request as drafted because his "letter did not contain sufficient information to conduct an accurate search of the [CRS]."  Hardy Decl. ¶ 7; *see id.*, Ex. C at 1.  An agency incurs no obligation under the FOIA unless and until the requester files a proper FOIA request, that is, a request which "reasonably describes" the records sought and is submitted in accordance with agency regulations.  5 U.S.C. § 552(a)(3)(A).

It is apparent that the FBI did not make a determination with respect to plaintiff's request for a fee waiver.  It also is apparent that plaintiff is not entitled to a fee waiver.  Generally, an agency may waive fees "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  5 U.S.C. § 552(a)(4)(A)(iii); *see* 28 C.F.R. § 16.10(k)(1)(i).  The Court accepts plaintiff's representation that his purpose is not primarily commercial.  However, disclosure of the emails he requested serves no public interest.  Rather, the emails serve plaintiff's personal interest – proving his innocence – and plaintiff fails to demonstrate that their disclosure would contribute to the public's understanding of government activities.  *Cf. Woods v. U.S. Dep't of Justice*, 968 F. Supp. 2d 115, 123 (D.D.C. 2013); *Thomas v. U.S. Dep't of Justice*, 531 F. Supp. 2d 102, 108 (D.D.C. 2008).

Plaintiff's next arguments are made as if his initial FOIA request had not changed over time.  For example, he faults the FBI for its alleged failure to "state[] whether all the 16,039 responsive pages were reviewed and/or identified any more responsive pages," Pl.'s Opp'n at 2; *see id*. at 15, and its refusal to "provide 'related' documents to the emails themselves," *id*. at 14. In addition, plaintiff faults the FBI for not explaining "the origin of [the] 10 pages of records

released on June 25, 2015," and its "decision to narrow plaintiff['s] request to emails only."  *Id.*
at 4.  Absent plaintiff's agreement to pay fees or, alternatively, a waiver of fees, the FBI need not
have searched and released more than 100 pages of records.  Similarly, upon plaintiff's
clarification that he wanted email messages first, the FBI need not have searched any other
documents in addition to the 103 pages of records it was obliged to process without plaintiff
incurring fees.

Plaintiff's final challenges pertain to the actual results of the search.  He contends that the
email messages released to him were not among those disclosed to him and his defense counsel
at the time of his criminal trial.  *See* Pl.'s Opp'n at 5-7.  Further, he complains that email
messages had been destroyed and therefore could not have been disclosed to him in response to
his FOIA request.  *See id.* at 10, 16-18.  The fact that the FBI destroyed "[o]ther potentially
responsive records . . . on or about February 17, 2010," Hardy Decl. ¶ 22 n.4, along with the
release of emails plaintiff had not seen at the time of the criminal trial, leads him to believe that
the emails still "may be in defendant's agency files."  Pl.'s Opp'n at 10.

"The issue in a FOIA case is not whether the [agency's] searches uncovered responsive
documents, but rather whether the searches were reasonable."  *Moore v. Aspin*, 916 F. Supp. 32,
35 (D.D.C. 1996) (citations omitted).  And plaintiff's "speculation as to the existence of
additional records . . . does not render the search[] inadequate."  *Concepción v. Fed. Bureau of
Investigation*, 606 F. Supp. 2d 14, 30 (D.D.C. 2009); *see SafeCard Servs.*, 926 F.2d at 1201
("Mere speculation that as yet uncovered documents may exist does not undermine the finding
that the agency conducted a reasonable search for them.").  Furthermore, any entitlement
plaintiff may have had as a criminal defendant to potentially exculpatory information does not
alter or expand the FBI's obligations in a FOIA case.  *See, e.g., Hale v. U.S. Dep't of Justice*, 226

F.3d 1200, 1204 n.4 (10th Cir. 2000); *Mingo v. U.S. Dep't of Justice*, No. 08-2197, 2009 WL

2618129, at *2 (D.D.C. Aug. 24, 2009).

Nor does "the fact that responsive documents once existed . . . mean that they remain in

the [FBI's] custody today or that [the FBI] had a duty under [the] FOIA to retain

[them]." *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004).   Rather, the FOIA "only obligates

[the FBI] to provide access to those [records] which it in fact has created and retained."

*Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 153 (1980).  In short,

even if the FBI once maintained additional potentially responsive records, its response to

plaintiff's FOIA request is not inadequate because the desired records no longer exist.  *See James*

*v. U.S. Secret Serv.*, 811 F. Supp. 2d 351, 358 (D.D.C. 2011) ("An agency does not control a

record which has been destroyed, . . . and it is under no obligation to obtain a duplicate of or to

re-create a record in order to fulfill a FOIA request." (citations omitted)), *aff'd*, No. 11-5299,

2012 WL 1935828 (D.C. Cir. May 11, 2012) (per curiam); *see also Strunk v. U.S. Dep't of State*,

770 F. Supp. 2d 10, 16 (D.D.C. 2011) (rejecting plaintiff's "opinion and speculation as to the

existence or wrongful destruction of responsive records").

*C.  Exemption 7*

1.  Law Enforcement Records

Exemption 7 protects from disclosure "records or information compiled for law

enforcement purposes," but only to the extent that disclosure would cause an enumerated harm,

*see FBI v. Abramson*, 456 U.S. 615, 622 (1982), including where disclosure "could reasonably

be expected to constitute an unwarranted invasion of personal privacy," 5 U.S.C. § 552

(b)(7)(C).  "To show that the disputed documents were compiled for law enforcement purposes,

the [agency] need only establish a rational nexus between the investigation and one of the

agency's law enforcement duties and a connection between an individual or incident and a

possible security risk or violation of federal law." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (internal quotation marks and citations omitted).

The declarant explains that "the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States." Hardy Decl. ¶ 39. He states that "[t]he records responsive to plaintiff's [FOIA] request were compiled during the course of the FBI's investigation into plaintiff's conspiracy to commit kidnapping and murder in violation of 18 U.S.C. § 1201(a)(1)." *Id.* ¶ 40. Thus, the declarant avers, the responsive records "were compiled for a law enforcement purpose" and "squarely fall within the law enforcement duties of the FBI." *Id.* The Court concludes that all the responsive records are law enforcement records for purposes of Exemption 7.

## 2. Exemption 7(C)[6]

"In deciding whether the release of particular information constitutes an unwarranted invasion of privacy under Exemption 7(C), [the Court] must balance the public interest in disclosure against the [privacy] interest Congress intended the Exemption to protect." *ACLU v. U.S. Dep't of Justice*, 655 F.3d 1, 6 (D.C. Cir. 2011) (internal quotation marks and citation omitted); *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1115 (D.C. Cir. 2007); *Beck v. U.S. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993). The privacy interest at stake belongs to

---

[6] "The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C)." Hardy Decl. ¶ 42 n.10. In this case, because all of the responsive records were compiled for law enforcement purposes and all of the information pertaining to third party individuals properly is withheld under Exemption 7(C), the Court need not consider whether Exemption 6 applies to the same information. *See Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1994).

the individual, not the government agency, *see U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 763-65 (1989), and "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity," *Stern v. FBI*, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  When balancing the private interest against the public interest in disclosure, "the only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. U.S. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773); *see also Sussman*, 494 F.3d at 1115.  It is a FOIA requester's obligation to articulate a public interest sufficient to outweigh an individual's privacy interest, and the public interest must be significant.  *See Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

The FBI withholds the names of and identifying information about "local law enforcement personnel responsible for conducting, and/or maintaining the investigative activities reported in the documents."   Hardy Decl. ¶ 44.  The declarant explains that release of this "information in association with this investigation could hinder their effectiveness in conducting investigations[,] could subject[ them] to unofficial, harassing inquiries into their involvement in this investigation, whether or not they are currently employed at their respective agencies[,] and could subject them to possible reprisal."  *Id*.  The declarant asserts that, "[i]n contrast to these substantial privacy interests, there is no public interest in the disclosure of this information because it would not shed light on the FBI's operations and activities."  *Id*.

In addition, the FBI withholds "the name and/or identifying information of [the] FBI Special Agent . . . responsible for conducting[] and/or maintaining the investigative activities reflected in the documents responsive to plaintiff's FOIA[] request," by, for example, conducting interviews and reporting on the status of the investigation.  *Id*. ¶ 45.  The declarant explains that

any "[p]ublicity (adverse or otherwise) regarding any particular investigation to which [Special

Agents] have been assigned may seriously prejudice their effectiveness in conducting other

investigations." *Id*.  Release of their identities "in connection with a particular investigation

could trigger hostility toward [those] agent[s]." *Id*.  For example, individuals "targeted by . . .

law enforcement actions [may] carry a grudge" and later "may seek revenge on the agents . . .

involved in a particular investigation." *Id*.  Thus, the declarant asserts, the Special Agent have a

"substantial privacy interest[] in information about [him] in criminal investigative files," and

release of the information serves no public interest because his identity by itself "would not . . .

significantly increase the public's  understanding of the FBI's operations and activities." *Id*.

    Lastly, the FBI withholds "the names and identifying information of third parties who

were merely mentioned in the responsive documents." *Id*. ¶ 46.  According to the declarant,

"[t]hese individuals were not of investigative interest to the FBI," and they appear in the records

only because they came into contact with subjects of FBI investigation. *Id*.   "Disclosure of these

third parties' names . . . in connection with an FBI investigation of criminal activities carries an

extremely negative connotation," and such disclosure "would subject these individuals to

possible harassment or criticism[, or could] focus derogatory inferences and suspicion on them."

*Id*.  They "maintain legitimate privacy interests in not having information linking them to the

investigation," the declarant asserts. *Id*.  And "[i]n contrast to these substantial privacy interests,

there is no public interest in disclosure of this information because it would not shed light on the

FBI's operations and activities." *Id*.

    The withholding of the names of and identifying information about federal law

enforcement officers, support personnel and other employees under similar circumstances

routinely is upheld.  *See, e.g., Concepción*, 606 F. Supp. 2d at 39; *Miller v. U.S. Dep't of Justice*,

562 F. Supp. 2d 82, 120 (D.D.C. 2008).  The Court concludes that the FBI properly withheld

third party names from the responsive records under Exemption 7(C).

### 3.  Exemption 7(E)

Exemption 7(E) protects from disclosure law enforcement records "to the extent that the

production of such . . . information . . . would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions . . . if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Under Exemption 7(E), the FBI withholds

CART data, Hardy Decl. ¶ 48, that is, "data resulting from the FBI's analysis of computers

seized pursuant to . . . search warrants executed," *id*. ¶ 49.

The declarant describes CART as the entity which "provides digital forensics, technical

capabilities, and related services and support to the FBI[] and other law enforcement agencies,"

particularly for "investigations that are reliant . . . upon digital evidence . . . through acquisition,

preservation, examination processing, and presentation of stored digital information in computers

or in other electronic devices or media."  *Id*.  Its "examiners are experts at extracting data from

digital media" including desktop and laptop computers.  *Id*.  If "detailed information about

CART software, equipment, techniques, procedures and/or types of reports generated by CART

during . . . forensic testing processes" were disclosed, the declarant explains, "the FBI's

effectiveness in investigating crimes where evidence can be found on computers and other digital

media" would be impeded.  *Id*.  Furthermore, he states, disclosure "would also aid in

circumvention of the law by providing criminals with the information necessary for them to

adjust behavior in order to avoid detection, develop and/or [use] technology less susceptible to

law enforcement detection or scrutiny, and/or use or develop technology to counteract techniques

used by CART."  *Id*.

The Court concludes that the FBI properly has withheld CART data under Exemption 7(E).  *See Johnson v. FBI*, No. CV 14-1720, 2016 WL 5162715, at \*6 (E.D. Pa. Sept. 21, 2016).

### 4.  Segregability

If a record contains some information that is exempt from disclosure, any reasonably segregable information must be released after deleting the exempt portions, unless the non-exempt portions are inextricably intertwined with exempt portions.  5 U.S.C. § 552(b); *see Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022 (D.C. Cir. 1999).  A court errs if it "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof."  *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1242 n.4 (D.C. Cir. 1991) (quoting *Church of Scientology of Cal. v. U.S. Dep't of the Army,* 611 F.2d 738, 744 (9th Cir. 1979)).

The declarant states that "[a]ll documents responsive to plaintiff's [FOIA] request were processed to achieve maximum disclosure[.]"  Hardy Decl. ¶ 35.  He avers that "[n]o reasonable segregable, nonexempt portions [of these records] have been withheld from plaintiff."  *Id.*  Based on this representation and the Court's review of the record of this case, the Court concludes that the FBI has released all reasonably segregable information.

III.   CONCLUSION

The FBI demonstrates that its search for records responsive to plaintiff's FOIA request was adequate and that it properly has withheld responsive information under Exemptions 7(C) and 7(E).  It further establishes established that there is no genuine issue of material fact as to its compliance with the FOIA and that it is entitled to judgment as a matter of law.  Accordingly, the Court will grant defendant's motion.  An Order accompanies this Memorandum Opinion.


DATE: March 28, 2017                          /s/
                                              EMMET G. SULLIVAN
                                              United States District Judge